# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

ROY PEARSON                                                                                      PLAINTIFF

v.                                                                Civil Action No. 1:06CV321-SA-JAD

CITY OF LOUISVILLE                                                                         DEFENDANT

## MEMORANDUM OPINION

Comes now before this Court, Defendant's Amended Motion for Summary Judgment [58].[1] After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

*A. Factual and Procedural Background*

For purposes of this litigation, Plaintiff owns two tracts of land in the City of Louisville, Mississippi. The legal descriptions for those two properties are as follows:

> PROPERTY A:    Lot 5 and 6 in Block 4, East End Highland Addition to the City of Louisville, Mississippi, as per plat now on file in the office of the Chancery Clerk of Winston County, Mississippi.
>
> PROPERTY B:    The West 100 feet of Lot 4 and the North 40 feet of Lot 1 of Block 4 of the East End Highland Addition to the City of Louisville, Winston County, Mississippi.

Prior to 2001, an old store which the plaintiff used for storage was located on Property A and a dilapidated house was located on Property B. In 2001, the City of Louisville, acting pursuant to Mississippi Code Section 21-19-11, determined that the house on Property B was in such a state of disrepair that it constituted a "menace to the public health and safety of the community." After the

---

[1] Defendant filed a Motion for Summary Judgment [46], and this Court allowed the City to amend the motion to include a defense under the Mississippi Tort Claims Act. See Order on Motion to Strike and Motion to Amend [57]. Because the Amended Motion for Summary Judgment trumps the original motion, that motion is hereby treated as moot.

City's determination, the plaintiff cleaned the property by removing the house, leaving only a tree and a concrete slab behind on Property B.

In 2005, a City of Louisville Alderperson and the City's mayor received complaints regarding the old store on Plaintiff's Property A. The Board sent the City Engineer out to Property A to determine whether the structure constituted a "menace to the public health and safety of the community." He concluded that it did. Notice was sent by certified mail of a hearing set for August 16, 2005, regarding the unclean property owned by Roy Pearson. That notice contained the incorrect legal description for Property A, and instead referenced that the unclean property was located

> The West 100 feet of Lot 4 and the North 40 feet of Lot 1 of Block 4 of the East End Highland Addition to the City of Louisville, Winston County, Mississippi.[2]

That notice also stated that if, at the hearing, the Board of Aldermen adjudicated the property to be a menace to the public health and safety of the community, and the owner did not clean the land, the City would proceed to clean the land at the owner's expense.

At the August 16, 2005, hearing, the Board held that the property was a menace and afforded the landowner thirty (30) days to clean the property. Roy Pearson did not attend this hearing, although he admitted that he did receive notice. The Board sent Roy Pearson another notice, this time iterating that the property was in such a state of uncleanliness as to be a menace to the public health and safety of the community, and that Pearson had thirty days to clean the property or the City would proceed to clean the property and assess the costs to him.

---

[2]The Board minutes reference the unclean property as 110 North Hight Street. There is no indication in the record, however, as to whether that address is the street address for Property A or B.

On September 20, 2005, the Board held another meeting and authorized the cleanup of the property with all costs of cleanup assessed to the owner after determining that the property was not adequately cleaned by the landowner within the time allowed. Roy Pearson was in attendance at that meeting.

No action was taken on the property, however, and at the November 15, 2005, meeting, Pearson was given fourteen more days to complete the cleanup of his property. The next meeting, on December 6, 2005, the Board voted that as the property had not been sufficiently cleaned, and additional time had been given, Pearson was allowed until December 9 to sufficiently clean the property or the property would be cleaned by the City. The minutes note that the Public Works Director was directed to notify the landowner of this final deadline.

Sometime in September, at the conclusion of the first thirty day deadline, Roy Pearson began making repairs on the old store located on Property A. Specifically, he took the siding off, put armac on the sides, removed the lumber, and took the roof off. Pearson testified that as of November 29, 2005, his property was not sufficiently clean. Indeed, Pearson agreed that the property was not completely cleaned by December 9. On December 12, 2005, City employees came to Property A with a bulldozer and demolished the structure on Pearson's land. Pearson had three workers present at the building on the date of destruction putting a roof on the structure.

Plaintiff filed this lawsuit on November 24, 2006, alleging that the City of Louisville infringed on his Fifth and Fourteenth Amendment due process rights. Plaintiff also makes a state claim under the Mississippi Constitution for lack of due process and governmental taking.

*B. Summary Judgment Standard*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'. . . that there is an absence of evidence to support the nonmoving party's case"). The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (citing FED. R. CIV. P. 56(c), (e)). That burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e). All legitimate factual inferences must be made in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the nonmovant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

*C. Discussion and Analysis*

Plaintiff brings his constitutional claims under 42 U.S.C. § 1983, which states:

Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

4

42 U.S.C. § 1983. Section 1983 alone does not create substantive rights. Dismukes v. Hackathorn, 802 F. Supp. 1142, 1444 (N.D. Miss. 1992). Rather, Section 1983 creates a remedy for violation of federal, constitutional, or statutory rights. Cousin v. Small, 325 F.3d 627, 631 (5th Cir. 2003). Section 1983 was designed to deter state and government actors from abusing their official positions by depriving citizens of their constitutionally protected rights and provides redress for any such deprivation. Johnston v. Lucas, 786 F.2d 1254, 1257 (5th Cir. 1986). Mere assertions that a defendant violated a plaintiff's rights are insufficient to maintain a Section 1983 claim. Dismukes, 802 F. Supp. at 1444 (citing Easterling v. Glennville, 694 F. Supp. 911, 917 (S.D. Ga. 1986)). To maintain a successful 1983 action, the plaintiff must prove there has been (1) a deprivation of a federal right (2) that occurred under color of state law, which (3) was caused by a state actor. Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004); Phillips v. Vandygriff, 711 F.2d 1217, 1221 (5th Cir. 1983).

Municipal liability results if the deprivation of constitutionally protected rights was inflicted pursuant to an official policy or custom. McKinney v. Irving Indep. Sch. Dist., 309 F.3d 308, 313 (5th Cir. 2002). Municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001); Monell v. Dep't of Soc. Services, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. Peters v. City of Biloxi, 57 F. Supp. 2d 366, 376 (S.D. Miss. 1999); see Snyder v. Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998); Piotrowski, 237 F.3d at 580 (stating that these two

5

requirements "must not be diluted."). In order to carry this heavy burden, "the plaintiff must generally demonstrate at least a pattern of similar violations." Monell 436 U.S. at 691, 98 S. Ct. 2018.

The three requirements for municipal liability detailed above are necessary in order to distinguish between isolated violations committed by local employees and those violations which may be committed by the government itself. Piotrowski, 237 F.3d at 578. Therefore, municipalities may not be held liable for acts of lower level employees but may be held liable for constitutional violations committed pursuant to an official policy or custom. Id. at 578. In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right, he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. Id. at 580.

Pearson contends that his Fourteenth Amendment procedural and substantive due process rights have been infringed on, he was deprived of a liberty interest in his personal property, and the City's demolition of the store on his property amounted to a taking that should be compensated.

Plaintiff first contends that the City's failure to include the correct legal description on the resolution condemning the property violates his procedural due process rights. Specifically, Pearson argues that without the proper legal description on the resolution, the resolution is a nullity, and therefore, the City had no statutory authority to enter onto his property and destroy his building. Defendant argues that as the plaintiff waived his administrative remedies by failing to file a notice of appeal and bill of exceptions, his procedural due process claim is improperly before this Court. Further, the Defendant argues that even if the claim is properly before the court, Plaintiff had

sufficient notice, acknowledged that he knew exactly which property the City was condemning, and took actions to clean the correct property; thus, his procedural due process claim fails.

Mississippi Code Section 11-51-75 provides that "[a]ny person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision . . . ." That appeal would be heard by the circuit court who "shall affirm or reverse the judgment [of the municipal board]." Miss. Code Ann. § 11-51-75.

Plaintiff here is not seeking to overturn the decision to condemn his property or destroy his property, he is asserting his right to constitutional protections. Therefore, Plaintiff's failure to file his notice of appeal and bill of exceptions is not dispositive in this case.

Mississippi Code Section 21-19-11 governs the notice and hearing requirements for municipal actions and requires that notice to the property owner be given two weeks before the date of a hearing. As noted above, Pearson was afforded two weeks notice and admitted that he received the notice but failed to appear. Moreover, Pearson testified:

> Q: When you received this letter [giving notice of the hearing on August 16, 2005], did you know what property the City was talking [about] or what property the City was speaking of when they said there was going to be a meeting regarding some property that had been found to be unsafe or unclean?
>
> A: I knew the one. Yeah.
>
> Q: And which property was the City speaking of?
>
> A: The little building that – the little building.
>
> Q: And that the property that we have been describing as Property A.

7

> A: A.
>
> Q: Correct?
>
> A: Correct.

Pearson testified that despite the mistaken property description in the notices he received, he knew which property the Board was referring to and did not realize the legal description was not for Property A until after the property had already been torn down by the City. Accordingly, Plaintiff knew which property the City was referring to in the resolution and was provided two weeks notice and a chance to be heard. Therefore, the City met its procedural due process burden, and Plaintiff failed to allege the City was deliberately indifferent to his procedural due process rights.

Plaintiff also alleges that his substantive due process rights were violated because even though the Board's initial orders and actions were substantially related to public health, safety, and welfare of the community, the ultimate actions were arbitrary and capricious.

"A violation of substantive due process, for example, occurs only when the government deprives someone of liberty or property; or, to use the current jargon, only when the government works a deprivation of a constitutionally protected interest." Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988) (internal quotation marks and citations omitted). "In the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrary or capricious." Simi Inv. Co. v. Harris County, 236 F.3d 240, 249 (5th Cir. 2000) (citing DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 601 (3d Cir. 1995) . "The question is only whether a rational relationship exists between the policy and a conceivable legitimate objective. If the question

is at least debatable, there is no substantive due process violation." FM Prop. Oper. Co. v. City of Austin, 93 F.3d 167, 174 (5th Cir. 1996) (citations omitted). Whether a rational relation in fact exists is a question of law that the court must determine. Hidden Oaks, 138 F.3d at 1044.

In 2005, a City of Louisville Alderperson and the City's mayor received complaints regarding the old store on Plaintiff's Property A. The Board sent the City Engineer out to Property A to determine whether the structure constituted a "menace to the public health and safety of the community." The City Engineer concluded that it did. Specifically, that engineer reported that the property was in a bad state of disrepair, was open, unsafe, and unclean. Pearson himself testified that the building was damaged, "decayed," and that the back of the building had collapsed.

Plaintiff has failed to show that the City of Louisville's decision to clean up his property was arbitrary or capricious. The legitimate government objective was the protection of public health and safety of the community. The City put into action the Mississippi Code Section allowing them to mandate the clean up of property to make that property clean and safe for the community. Thus, there is a rational relationship between the City's policy and its intended government objective.

Plaintiff also claims that he was denied a liberty interest in his property by the City. A liberty interest in the right of quiet possession and unfettered use of real estate has not been explicitly recognized by any federal court. See Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 122 S. Ct. 1465, 152 L. Ed. 2d 517 (2002) (development moratorium on private property held constitutional); Palazzolo v. Rhode Island, 533 U.S. 606, 121 S. Ct. 2448, 150 L. Ed. 2d 592 (2001) (environmental regulation prohibiting the development of certain private property held constitutional). Plaintiff fails to cite any law or rationale for why such a liberty should be recognized by this Court. Accordingly, Plaintiff's claim for a "liberty interest" is dismissed.

Plaintiff also contends that the City's actions constitute a taking under the Fifth Amendment to the Constitution. Defendant counters that Plaintiff has failed to exhaust his state administrative remedies, and thus, his Fifth Amendment claim is unripe.

The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226, 17 S. Ct. 581, 41 L. Ed. 979 (1897), directs that "private property" shall not "be taken for public use, without just compensation." Before addressing the merits of any appeal, however, this Court must be convinced that the claim in question is ripe. See Samaad v. City of Dallas, 940 F.2d 925, 933 (5th Cir. 1991). Ripeness is a question of law that implicates this Court's subject matter jurisdiction. Sandy Creek Investors, Ltd. v. City of Jonestown, Tex., 325 F.3d 623, 626 (5th Cir. 2003); Groome Res. Ltd., L.L.C. v. Parish of Jefferson, 234 F.3d 192, 198-99 (5th Cir. 2000).

The Supreme Court has adopted a two-prong test for ripeness under the Fifth Amendment's Takings Clause, explaining that such claims are not ripe until (1) the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner; and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides. See Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985).

The City of Louisville already destroyed and removed the violative structure on Plaintiff's property. Therefore, a final decision was made and implemented as to Plaintiff's property. Thus, the first prong has been satisfied.

Defendant argues that Plaintiff has failed to fulfill the second prong. The "adequate procedures" the Defendant cites are the Mississippi Code Section cited above providing for an appeal of a municipal board's decision and Mississippi's inverse condemnation law.

A violation of the Takings Clause does not occur until just compensation is denied. Urban Developers, LLC v. City of Jackson, 468 F.3d 281, 294 (5th Cir. 2006). Thus, any takings claim by Pearson is unripe under the second prong of Williamson County, which requires the plaintiff to have sought compensation for the alleged taking through whatever adequate procedures the state provides before seeking to interpose the federal courts, through section 1983, between a state and its citizen. 473 U.S. at 175, 105 S. Ct. 3108; Vulcan Materials Co. v. City of Tehuacana, 238 F.3d 382, 385-86 (5th Cir. 2001) (accord). Under this second prong, the property owner bears the burden of proving that state law proceedings are unavailable or inadequate. Urban Developers, 468 F.3d at 295 (citing Williamson County, 473 U.S. at 185, 105 S. Ct. 3108); see also Samaad, 940 F.2d at 934 ("'[I]nadequate' procedures are those that almost certainly will not justly compensate the claimant."). Pearson has not met that burden here.

Mississippi law provides for inverse-condemnation actions, see e.g., City of Gulfport v. Anderson, 554 So. 2d 873, 874 (Miss. 1989), yet Pearson has not sought compensation through Mississippi law for the alleged taking. See Bryan v. City of Madison, Mississippi, 213 F.3d 267, 276 (5th Cir. 2000) (rejecting a takings claim as unripe because the property owner had not first resorted to Mississippi's court of eminent domain). As Pearson did not avail himself of state remedies prior to bringing his federal takings claim, the claim is unripe and is dismissed without prejudice until such time as this Court has subject matter jurisdiction.

*State Law Claims*

11

Plaintiff also brings state law claims based on the Mississippi Constitution, Article 3, Section 14, and Article 3, Section 17. Defendant contends that the Mississippi Tort Claims Act precludes Plaintiff's Mississippi Constitutional claims against the municipal defendant. Specifically, the City of Louisville alleges that they are entitled to immunity under Mississippi Code Section 11-46-9(1)(a), (b), and (c).

By definition, the MTCA is the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil liability. Miss. Code Ann. § 11-46-7(1); Elkins v. McKenzie, 865 So. 2d 1065, 1078 (Miss. 2003) (internal citations omitted); L.W. v. McComb Separate Mun. Sch. Dist., 754 So. 2d 1136, 1138 (Miss. 1999); Moore v. Carroll County, Miss., 960 F. Supp. 1084, 1088 (N.D. Miss. 1997).

Plaintiff's state law claims are based on constitutional violations of due process and governmental takings. Plaintiff's claims are not based or founded on torts. Therefore, any immunity under the MTCA the City of Louisville seeks to assert is inapplicable. See McLemore v. Miss. Transp. Comm'n, No. 2007-SA-00597-SCT (June 12, 2008) (reversing trial court's grant of summary judgment on the basis of immunity under the MTCA where claim was based on Article 3, Section 17 and was not founded on a tort).

As to Plaintiff's Mississippi Due Process claim, "although worded differently from the Federal version, [the Mississippi Due Process Clause] is implemented identically." Urban Developers, 468 F.3d at 304 (citing Tucker v. Hinds County, 558 So. 2d 869, 873 (Miss. 1990). As noted in the above analysis, Plaintiff has not created a genuine issue of material fact as to his federal due process claims, thus, his state law due process claims are dismissed as well.

Article 3, Section 17 states:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

The Mississippi Supreme Court has held that Article 3, Section 17 is inapplicable to a case factually on point with this case. In <u>Bond v. City of Moss Point</u>, 240 So. 2d 270 (Miss. 1970), the City of Moss Point found that a structure constituted a public nuisance and ordered the plaintiffs to remove the building within ninety days. The City further instructed that in the event the property owners failed to remove the building, the City of Moss Point would remove the building at the landowner's expense. <u>Id</u>. at 270. The property owner refused to clear the land or repair the building. After receiving notice and a public hearing, the City of Moss Point still held that the property was a nuisance, therefore, it mandated the property's clearance. <u>Id</u>. at 271.

The property owners contended that the City was taking private property for public use without compensation as prohibited under Article 3, Section 17 of the Mississippi Constitution. <u>Id</u>. at 270. The Mississippi Supreme Court noted that "[h]eretofore, this Court has never been called on to rule on the proposition of whether a municipality is authorized to raze and remove an unsafe and unfit building at the expense of the property owner when he has failed and refused to either repair his building or remove it and clear his land." <u>Id</u>. at 272. The Court then cited an excerpt from a treatise which stated:

> "It is a general rule that a municipality in the exercise of its police power may, without compensation, destroy a building or structure that is a menace to the public safety or health, but public necessity is the measure of this municipal right, and the requisite of public necessity precludes destruction of valuable property except in case of emergency or in case of refusal or neglect of the owner, after reasonable notice and

13

opportunity, to remove or correct the evil constituting the nuisance."

Id. at 272 (citing 7 McQuillin, The Law of Municipal Corporations, (3rd ed. 1968), § 24.561).

Accordingly, the Court found that

[i]t is a sensible and reasonable rule that where the property owner, after reasonable notice provided for in an ordinance, fails and refuses to either repair or remove an unsafe and unfit building that constitutes a public nuisance, that municipality can remove it at the owner's expense." To hold otherwise would mean that "the property owner could enjoy the profits from his building during its useful life and then neglect or abandon it in its old age and demand that the municipality, at the expense of all taxpayers, compensate him for it or remove it and clear his property so that he could show his land to its best advantage.

Id. at 273.

Likewise, here, Plaintiff was afforded a reasonable time to comply with the City's decree to clear or repair the property. Plaintiff was noticed by certified mail on July 20, 2005, of his pending public hearing on August 16. In that notice, Plaintiff was informed that the purpose of the hearing was to determine whether or not his property was in such a state of uncleanliness to be a menace to the public health and safety of the community. Plaintiff admits that he was not present at the public hearing on August 16, but that he did receive notice thereof. At the August 16 hearing, Plaintiff's property was found to be a nuisance, and Plaintiff, again was sent by certified mail, a letter stating that the Board had determined that his property was a menace to the public health and safety of the community. Further, the notice specifically stated that he would be given thirty days from August 16, to clean the property or the City would clean the property. Roy Pearson was in attendance during the September 20 Board meeting wherein the Board found the property not in compliance with the request to be cleaned within thirty days and authorized to be cleaned by the City with all costs assessed to the owner.

14

In accord with Bond, Plaintiff was given sufficient notice and time to clean the property himself. Due to the fact that he did not comply with the City's directives within the time given, the Board was authorized to clear his property and assess the costs to him without that constituting a taking under the Mississippi Constitution. Accordingly, Plaintiff has failed to raise a genuine issue of material fact as to his state law takings claim and the same shall be dismissed.

*Conclusion*

Plaintiff acknowledged that he had notice and an opportunity to be heard prior to the City's action on his property; therefore, Plaintiff has failed to bring forth a genuine issue of material fact as to his procedural due process claim. Also, Plaintiff did not show that the government's decision and subsequent actions were arbitrary or capricious. Thus, Plaintiff's substantive due process claim is also summarily dismissed. The liberty interest Plaintiff claims he has is unrecognized by this Court, and Plaintiff's Fifth Amendment taking claim is unripe. Moreover, Defendant is not protected by the MTCA immunity. Plaintiff's Mississippi due process claims are dismissed for the same reasons as the federal due process claims. The actions alleged by Plaintiff did not amount to a taking under the Mississippi Constitution.

Accordingly, summary judgment is granted and this case is dismissed.

SO ORDERED, this the  4th   day of November, 2008.

                                          **/s/ Sharion Aycock**
                                          **U.S. DISTRICT JUDGE**